UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

CROSS SOUND CABLE COMPANY, LLC,

                       **MEMORANDUM & ORDER**

             Plaintiff,      21-CV-2771 (KAM) (ARL)

      - against -

LONG ISLAND LIGHTING COMPANY,

             Defendant.

---------------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

Eugene Cook, a member of the Huntington Town Council, seeks to permissively intervene in this breach of contract action between Plaintiff Cross Sound Cable Company, LLC and Defendant Long Island Lighting Company pursuant to Federal Rule of Civil Procedure 24(b)(1)(B).  (ECF No. 17 ("Mot.").)  On November 29, 2021, Magistrate Judge Arlene R. Lindsay issued a report and recommendation recommending that Mr. Cook's motion for permissive intervention be denied.  (ECF No. 41 ("R&R").)  On December 4, 2021, Mr. Cook filed objections to the Report and Recommendation. ECF No. 42 ("Objections").)

For the reasons set forth below, the court OVERRULES Mr. Cook's objections, ADOPTS the Report and Recommendation, and DENIES the motion for intervention.

**BACKGROUND**

**I.   This Action**

Plaintiff Cross Sound Cable Company, LLC ("CSC") operates a cable in Long Island Sound that connects the electric transmission grids of New England and Long Island, New York.  (ECF No. 1 ("Compl.") ¶ 2; ECF No. 16 ("Answer") ¶ 2.)  Defendant Long Island Lighting Company ("LIPA")[1] purchases transmission capacity on that cable from CSC pursuant to the terms of a Firm Transmission Capacity Purchase Agreement dated December 17, 2004 ("FTCPA"). (Compl. ¶¶ 2, 22; Answer ¶¶ 2, 22.)[2]

On July 8, 2020, an alleged "explosion" occurred at CSC's Tomson Converter Station in Shoreham, New York that resulted in a disruption of service to LIPA.  (Compl. ¶ 6; *see* Answer ¶ 6.) Under the FTCPA, service disruptions generally decrease the price at which LIPA purchases transmission capacity from CSC.  (Compl. ¶ 3.)  Service disruptions that qualify as a *force majeure* event, however, do not reduce the fees payable to CSC.  (*Id.* ¶¶ 4-5.)

---

[1] Like the parties and Magistrate Judge Lindsay, the court refers to Defendant Long Island Lighting Co. as "LIPA," which is an acronym for the Long Island Power Authority.  *See* Answer at 1 (stating that Long Island Lighting Co. does business as LIPA); *id.* ¶ 16 (admitting that Long Island Lighting Co. is a wholly owned subsidiary of the Long Island Power Authority).  The court notes, however, that the sole defendant in this action is Long Island Lighting Co.  If the Long Island Power Authority is a (or the) proper defendant, the parties shall advise the court and seek to amend their pleadings and the caption of this action.
[2] LIPA entered into a predecessor agreement with non-party TransEnergie U.S. Ltd. on August 2, 2000 (the "TEUS Agreement").  When TransEnergie's rights were assigned to CSC in 2004, CSC and LIPA amended the TEUS Agreement, entered into an interim FTCPA, and, as relevant here, entered into the FTCPA itself.  (Compl. ¶¶ 21-22; Answer ¶¶ 21-22.)

CSC commenced this action on May 17, 2021, claiming that the July 8, 2020 incident qualifies as a *force majeure* event and that LIPA has breached the FTCPA by failing to pay the full amounts owed for the transmission capacity it purchased. (*Id.* ¶ 14.) LIPA denies that a *force majeure* event occurred, has reduced its payments to CSC following the July 8, 2020 incident, and has held the disputed amounts in an escrow fund. (Answer ¶ 11.)

## II.   Mr. Cook's Prior Actions Against LIPA

Mr. Cook is no stranger to disputes with LIPA. The record in this case indicates that Mr. Cook is running for town supervisor of Huntington, New York with the slogan "Stop LIPA." (ECF No. 19 ("CSC Opp'n") at 2.) Mr. Cook has cited his proposed intervention in this case as part of his efforts to "fight LIPA's deceptive practices." (ECF No. 35 ("CSC Letter") at 2.)

As relevant here, Mr. Cook has twice filed lawsuits in state court against LIPA raising the same theory on which he seeks to intervene in this case. First, in March 2020, Mr. Cook sued LIPA, National Grid Generation LLC, and the Town of Huntington in New York Supreme Court. (ECF No. 18-1 ("*Cook I*") at 2.) Mr. Cook claimed that certain LIPA contracts were unenforceable because they were not submitted to, and approved by, New York's Public

Authorities Control Board ("PACB").  (*Id.* at 2-3.)[3]  On February 17, 2021, the court dismissed Mr. Cook's claims as untimely and for lack of standing.  (*Cook I* at 3-4.)

On March 7, 2021, Mr. Cook filed a second action against LIPA and the PACB in New York Supreme Court.  (ECF No. 20-2 ("Notice of Petition").)  In that action, Mr. Cook again challenged the validity of certain LIPA contracts, including the FTCPA, on the ground that LIPA failed to obtain approval from PACB. (*Id.* at 1-3.)  On November 3, 2021, the court dismissed Mr. Cook's claims. *See Cook v. Pub. Auth. Control Bd.*, Index No. 603885/2021, Dkt. No. 38 (N.Y. Sup. Ct. Nov. 3, 2021) ("*Cook II*"), *available at* https://iapps.courts.state.ny.us/webcivil/FCASMain.  As in the first action, the court concluded that Mr. Cook's claims were untimely and that he lacked standing.  (*Id.* at 2-3.)  In addition, the court rejected Mr. Cook's claims on the merits and found that certain LIPA agreements were not "projects" requiring PACB approval.  (*Id.* at 3.)  Mr. Cook has filed a notice of appeal in the second action.

### III.  Mr. Cook's Motion to Intervene in This Action

As in his state court actions, the thrust of Mr. Cook's motion for permissive intervention is that the FTCPA is void and

___

[3] The PACB is responsible for approving the financing and construction of "any project" proposed by certain state public benefit corporations, including LIPA. N.Y. Pub. Auth. Law § 51.

unenforceable because it was not submitted to and approved by the PACB. (Mot. at 24.)  Based on this argument, Mr. Cook seeks to interpose a public policy defense to CSC's claims for breach of contract and a declaratory judgment. (*Id.*)[4]  Thus, despite his history of opposition to LIPA, Mr. Cook seeks to intervene in support of LIPA's position in this action.

Both CSC and LIPA oppose Mr. Cook's motion.  CSC argues that Mr. Cook does not share a "common question of law or fact" with this action under Federal Rule of Civil Procedure 24, that any claim by Mr. Cook for declaratory relief is barred by the statute of limitations, and that Mr. Cook lacks standing to assert a claim. (CSC Opp'n at 3-8.)  Similarly, LIPA argues that Mr. Cook does not identify a common question of law or fact under Rule 24, that Mr. Cook's intervention would unduly delay and complicate these proceedings, and that Mr. Cook lacks any interest in the

---

[4] Specifically, Mr. Cook states that his motion for permissive intervention "is limited to the allegations of the Complaint as follows":

> AS AND FOR A PUBLIC POLICY DEFENSE ON THE FIRST AND SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT, SAID DEFENSE BEING INTERPOSED ON BEHALF OF INTERVENOR EUGENE COOK ON THE REQUIREMENT OF PUBLIC AUTHORITIES CONTROL BOARD SUBMISSION, PACB REVIEW AND PACB APPROVAL FOR THE (1) TRANSENERGIE U.S. LTD. AGREEMENT WITH LIPA OF AUGUST 2, 2000 REFERENCED IN THE CSC COMPLAINT AND (2) CSC SECOND LETTER AGREEMENT TO THE TEUS AGREEMENT OF DECEMBER 17, 2004 SIGNED BY LIPA AND CSC, A BRIDGE PERIOD (INTERIM) FIRM TRANSMISSION CAPACITY PURCHASE AGREEMENT BETWEEN CSC AND LIPA (THE "BRIDGE AGREEMENT") REFERNECED IN THE CSC COMPLAINT, AND THE FTCPA, THE BASE TERM OF WHICH IS 25 YEARS REFERENCED IN THE COMPLAINT (3) AND ANY "PROJECTS" AS THAT TERM IS DEFINED IN PUBLIC AUTHORITIES LAW RELEVANT TO THE INSTANT MATTER CONCERNING CROSS SOUND CABLE CONTRACTS REFERENCED IN THE COMPLAINT.
> Public policy demands plaintiff take nothing of defendant.

Mot. at 24.

parties' dispute.   (ECF No. 21 ("LIPA Opp'n") at 5-11.)   On September 28, 2021, the court referred the motion to intervene to Magistrate Judge Lindsay.   (9/28/21 Minute Order.)

Magistrate Judge Lindsay recommended denying the motion in a report and recommendation dated November 29, 2021.   (ECF No. 41.)   Judge Lindsay noted that Mr. Cook failed to attach a pleading to his motion as required by Federal Rule of Civil Procedure 24(c).   (*Id.* at 5.)   Because the motion indicated Mr. Cook's intent to assert a public policy defense on LIPA's behalf, however, Judge Lindsay proceeded to recommend denying Mr. Cook's motion on the merits.   (*Id.* at 6.)   Judge Lindsay principally reasoned that "[t]he addition of Cook's defense would unduly delay and complicate the Court's consideration of Plaintiff's breach of contract claim by engaging in a detailed review of public policy law and the possible implications of LIPA's alleged failure to obtain regulatory approval for the FTCPA in 1999."   (*Id.* at 8.)   Judge Lindsay also concluded that Mr. Cook's state court litigation provides an alternative forum weighing against intervention, and that any claim by Mr. Cook challenging the FTCPA's enforceability is barred by the statute of limitations.   (*Id.* at 9-11.)

Mr. Cook filed objections to the Report and Recommendation on December 4, 2021.   (ECF No. 42).   Mr. Cook's objections largely repeat his contentions that the FTCPA is void and unenforceable for lack of PACB approval, and that a claim for a declaration to

that effect is not barred by the statute of limitations. (*Id.* ¶¶ 1-8, 10, 12, 14-24, 26.)   With respect to the propriety of permissive intervention, Mr. Cook contends that the enforceability of the FTCPA "does not present a complicated issue" and that he "would bring a different perspective to the case that might assist the court." (*Id.* ¶¶ 9, 25.)   Mr. Cook also argues that he lacks any alternative forum to challenge the FTCPA's enforceability because his state court actions have been dismissed. (*Id.* ¶¶ 13, 26.)

### LEGAL STANDARD

The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  If a party makes specific and timely written objections to a magistrate judge's findings and recommendations, the court conducts a de novo review of "those portions of the report . . . to which objection is made." *Id.*; *see also* Fed. R. Civ. P. 72(b)(3). "Where no objection to a Report and Recommendation has been timely made, the district court 'need only satisfy itself that there is no clear error on the face of the record.'" *Minto v. Molloy College*, 2021 WL 804386, at *1 (E.D.N.Y. Mar. 3, 2021) (quoting *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001)). "Moreover, where the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report

and Recommendation strictly for clear error." *Id.* (quotations and citation omitted).

On a timely motion under Federal Rule of Civil Procedure 24(b)(1)(B), the court may permit "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." "A district court has broad discretion . . . to determine whether to permit intervention" under Rule 24(b)(1)(B). *St. John's Univ. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011) (citing *Restor-a-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 876 (2d Cir. 1984)); *see also, e.g.*, *Floyd v. City of New York*, 770 F.3d 1051, 1062 n.38 (2d Cir. 2014) (observing that a denial of permissive intervention "has virtually never been reversed" (quoting *Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996))).

"In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(c). The court also considers factors such as "the nature and extent of the intervenors' interests, whether their interests are adequately represented by the other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Calderon v. Clearview AI, Inc.*, 2020 WL 2792979, at

*7 (S.D.N.Y. May 29, 2020) (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978)).

## DISCUSSION

### I.   Complication and Delay

As the parties note, the Report and Recommendation was based principally on Magistrate Judge Lindsay's finding that intervention would unduly delay and complicate these proceedings. (R&R at 7-8.)  Mr. Cook's objections, however, barely challenge this portion of the Report and Recommendation.  Mr. Cook's conclusory assertion that the enforceability of the FTCPA does not present "a complicated issue" (Objections ¶ 25) "fails to constitute an adequate objection to warrant de novo review." *Minto*, 2021 WL 804386, at *2.

Nonetheless, reviewing this portion of the Report and Recommendation both for clear error and de novo, the court finds no basis to disturb Judge Lindsay's well-reasoned conclusion that permitting Mr. Cook to intervene would unnecessarily complicate and prolong the resolution of the claims and defenses in this action.  Indeed, "[i]n exercising its discretion to decide a motion for permissive intervention, the court's primary consideration is whether intervention will unduly delay or prejudice the adjudication of the rights of the parties whose lawsuits are being 'invaded.'" *Calderon*, 2020 WL 2792979, at *7 (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)).  Mr. Cook's

failure to adequately address this "primary consideration" is fatal to his motion.

The court fully agrees with Magistrate Judge Lindsay's sound finding that granting the motion would "radically transform the nature of the action from a breach of contract action into one that seeks to vindicate Mr. Cook's public policy objective of voiding contracts to which LIPA is a party." (R&R at 7.) The parties to this action do not dispute that the FTCPA is a valid contract. Rather, CSC and LIPA contest only whether the July 8, 2020 incident qualifies as a *force majeure* event. Mr. Cook, by contrast, seeks to inject a new public policy defense based on the alleged failure to obtain regulatory approval for the contract decades prior to the July 8, 2020 incident, which claims have twice been dismissed by state courts, as noted above. *See, e.g.*, *Nat'l Acad. of Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, --- F. Supp. 3d ----, 2021 WL 3271829, at *1 n.1 (S.D.N.Y. July 30, 2021) (denying motion where proposed intervenor sought to "inject collateral issues into an existing action" (quoting *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992))); *Kearns v. Cuomo*, 2019 WL 5060623, at *7 (W.D.N.Y. Oct. 9, 2019) (similar); *see also, e.g.*, *City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2021 WL 23326, at *5 (S.D.N.Y. Jan. 2, 2021) (denying motion where proposed intervenor presented "an issue that is outside the scope of the issues raised by Plaintiffs"), *appeal*

*filed*, No. 21-191 (2d Cir. Feb. 1, 2021); *Tymoshenko v. Firtash*, 2011 WL 5059180, at *3 (S.D.N.Y. Oct. 19, 2011) (same, where intervention would "introduce new issues of law while not contributing to the development of the factual record related to the current parties' dispute").

By delving into decades-old events that are unrelated to the alleged breach of contract, Mr. Cook's intervention would detract from – rather than "contribute to" – the "full development of the underlying factual issues in the suit." *Brennan*, 579 F.2d at 192 (citation omitted). As Judge Lindsay recognized, permitting Mr. Cook to intervene would require a "detailed review of public policy law and the possible implications of LIPA's alleged failure to obtain regulatory approval for the FTCPA in 1999." (R&R at 8.) Those issues are irrelevant to, and would delay the resolution of, the parties' dispute regarding whether the July 8, 2020 incident qualifies as a *force majeure* event under the FTCPA. Although Mr. Cook's challenge to the FTCPA's enforceability may be "broadly related to the subject matter of this action," it is "extraneous to the issues before the court" and thus intervention would "unduly delay the adjudication of the rights of the existing parties to the action." *United States v. City of New York*, 179 F.R.D. 373, 381 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 360 (2d Cir. 1999); *see also, e.g.*, *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972) (affirming denial of motion where "the complicating effect

of the additional issues and the additional parties outweigh[ed] any advantage of a single disposition of the common issues"); *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa Steamship Co.*, 2005 WL 427593, at *10 (S.D.N.Y. Feb. 22, 2005) (denying motion where proposed intervenor had in an interest in the suit "[a]t a macro level" but presented "decidedly different" claims).

## II.  Alternative Forum

As Judge Lindsay appropriately found (R&R at 9-10), the presence of an alternative forum also weighs against granting Mr. Cook's motion for permissive intervention. *See, e.g.*, *Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485, 492 (S.D.N.Y. 2005) (finding that "[t]he availability of an alternative forum . . . ensures that [the proposed intervenor] will have an adequate remedy"); *SEC v. Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *5 (S.D.N.Y. Aug. 25, 2003) ("The availability of alternative relief . . . is another factor militating against granting permissive intervention in this case."); 6 Moore's Federal Practice – Civil § 24.10[2][d] ("The effect of denial of permissive intervention is a relevant discretionary factor.  If an adequate remedy is available to the movant in another action, the effect of denying permissive intervention in an existing action is mitigated.").

As discussed above, Mr. Cook has filed two lawsuits in state court challenging LIPA's alleged failure to obtain PACB

approval for its contracts, including the FTCPA.  Mr. Cook argues that his state court actions should not weigh against intervention because he was "unable to convince the courts to move beyond standing issues" and thus lacks an alternative forum.  (Objections ¶¶ 13, 26.)  But as CSC notes, the state court in Mr. Cook's second action did in fact "move beyond standing issues."  (ECF No. 45 ("CSC Response") at 2 n.1.)

In particular, the state court rejected Mr. Cook's claim on the merits and found that "contrary to [Mr. Cook's] contentions, neither LIPA's tax-certiorari claims nor the LIPA Settlement Agreement involve a 'project' within the meaning of Public Authorities Law." *Cook II* at 3.  Mr. Cook has filed a notice of appeal in the second state court action, and his remedy is to pursue that appeal through the New York court system rather than unduly complicate and delay the instant federal action. *See, e.g.*, *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991) (finding that separate lawsuit "bolstered" court's decision to deny permissive intervention based on undue delay); *Rodriguez v. Pataki*, 211 F.R.D. 215, 219 (S.D.N.Y. 2002) (finding that intervention would unduly delay proceedings by introducing claims that intervenor was pursuing in state court); *see also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000) ("Because [proposed intervenors] remain free to file a separate

action, they have not established that they will be prejudiced if their motion to intervene is denied.").

## III.  Futility

The court agrees with Judge Lindsay that Mr. Cook's motion is properly construed as asserting a defense to CSC's claims for breach of contract and a declaratory judgment.  (R&R at 6; *see* Mot. at 24 (asserting that proposed intervention is "limited" to public policy defense).)  However, given Mr. Cook's repeated references to the statute of limitations, this court – like Judge Lindsay and the parties – will consider whether Mr. Cook may assert a claim for declaratory relief that the FTCPA is void.  (Objections ¶¶ 5-6, 16-23; ECF No. 26 ("Cook Reply") at 7-12; *see* R&R at 10-11; CSC Opp'n at 5-6; ECF No. 44 ("LIPA Response") at 4-5.)

As an initial matter, Mr. Cook has failed to comply with the requirement that a motion for intervention "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  Like Judge Lindsay (R&R at 5-6), this court has overlooked this procedural deficiency when analyzing Mr. Cook's proposed public policy defense because that defense is "clearly articulated" in the motion. *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, 2021 WL 2646349, at *13 (S.D.N.Y. June 28, 2021) (citation omitted).  To the extent that Mr. Cook seeks to assert an affirmative claim, however, his failure to comply with Rule 24(c) "is sufficient to

deny intervention." *G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002).  None of the papers filed by Mr. Cook specify the claim he seeks to bring, the party or parties against whom he seeks to bring it, or the court's basis for exercising jurisdiction.  *See, e.g.*, *Kumaran v. ADM Inv. Servs., Inc.*, 2021 WL 2333645, at *8 (S.D.N.Y. June 7, 2021) (denying motion where court could not determine the claims that the proposed intervenors intended to bring and the intervenors' position was not clear from other filings).

Even if the court overlooked the failure to comply with Rule 24(c), any claim by Mr. Cook seeking a declaration that the FTCPA is void would be futile because, as discussed below, Mr. Cook has not shown a basis for exercising subject matter jurisdiction, has not demonstrated standing, and presents untimely claims.  *See, e.g.*, *Dynamic Sys., Inc. v. Skanska USA Building Inc.*, 2021 WL 6063609, at *2 (S.D.N.Y. Dec. 21, 2021) ("[C]ourts have held that futility is a proper basis for denying a motion to intervene." (citation omitted)); *see also, e.g.*, *N.Y. Life Ins. Co. v. Sahani*, 730 F. App'x 45, 50 (2d Cir. 2018) (affirming denial of motion to intervene based on futility).

**Subject Matter Jurisdiction.**  First, Mr. Cook has not shown an independent basis for subject matter jurisdiction over his contentions.  *See, e.g.*, *Building & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2020 WL 5667181, at *8 (S.D.N.Y.

Sept. 23, 2020) (denying motion and noting that proposed intervenor's claims "may indeed be futile" due to lack of subject matter jurisdiction).  The Federal Rules of Civil Procedure "do not extend . . . the jurisdiction of the district courts." Fed. R. Civ. P. 82.  As a result, "a putative permissive intervenor must plead and prove the existence of an independent basis of subject matter jurisdiction over the claim in intervention." *Patton Boggs LLP v. Chevron Corp.*, 2016 WL 7156593, at *5 n.19 (S.D.N.Y. Dec. 7, 2016); *see also, e.g.*, *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (explaining that the requirement of an independent jurisdictional basis "stems not from any explicit language in Rule 24(b), but rather from the basic principle that a court may not adjudicate claims over which it lacks subject matter jurisdiction"); *Mopaz Diamonds, Inc. v. Inst. of London Underwriters*, 822 F. Supp. 1053, 1056 (S.D.N.Y. 1993) ("[A] party moving to intervene must 'show an independent ground of jurisdiction to support [its] permissive intervention.'" (citation omitted)); 6 Moore's Federal Practice – Civil § 24.22[1] ("[A]n application to intervene must have an independent basis of subject matter jurisdiction.").[5]  Mr. Cook does not invoke a

---

[5] Prior to the enactment of the supplemental jurisdiction statute, courts generally required permissive intervenors to demonstrate an independent basis for subject matter jurisdiction and exercised "ancillary jurisdiction" over the claims of intervenors as of right. *See* 7C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1917. "Congress'[s] passage of the supplemental jurisdiction statute . . . makes clear that the course previously followed with

federal question, and any claim against LIPA for a declaration that the FTCPA is void would not fall independently within the court's diversity jurisdiction because LIPA and Mr. Cook are both citizens of New York.  (Compl. ¶ 16; ECF No. 17-6 ¶ 1.)

The court generally has supplemental jurisdiction over claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Claims form part of the same case or controversy under Article III when they derive from a "common nucleus of operative fact."  *Pierre v. City of New York*, 844 F. App'x 411, 413 (2d Cir. 2021) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)).  As discussed above, the operative facts for CSC's claims in this action relate exclusively to the *force majeure* clause and the July 8, 2020 incident.  The operative facts for the proposed intervenor's declaratory judgment claim that the FTCPA is void, by contrast, concern unrelated events that occurred decades earlier.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002) (supplemental jurisdiction extends

---

respect to permissive intervention must continue to be followed." *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997); *see also, e.g.*, *Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015) (recognizing requirement); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (same).  Courts have formulated a "narrow exception," not applicable here, "when the third party seeks to intervene for the limited purpose of obtaining access to documents protected by a confidentiality order."  *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 316 (D. Conn. 2009) (quoting *Nat'l Children's Ctr.*, 146 F.3d at 1047)).

to claims that "arise[] out of approximately the same set of events"); *Go New York Tours, Inc. v. Tour Central Park, Inc.*, 2021 WL 3721359, at *3 (S.D.N.Y. Aug. 20, 2021) (no supplemental jurisdiction where claims were "based on fundamentally different facts").

In addition, this action is based solely on diversity of citizenship. (Compl. ¶ 17.) When an action is based solely on diversity, the court lacks supplemental jurisdiction over "claims by persons . . . seeking to intervene as plaintiffs under Rule 24" when exercising such jurisdiction "would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b). It is true that Mr. Cook nominally seeks to intervene as a defendant, and thus presumably would assert a cross-claim against LIPA. However, "the parties' own determination of who are plaintiffs and who [are] defendants" is not binding on the court. *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). Rather, "federal courts have a 'duty' to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" *Genger v. Genger*, 771 F. App'x 99, 100 (2d Cir. 2019) (quoting *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1993)). In making this determination, the court considers "whether there is a 'collision of interests' so as to create 'an actual, substantial controversy.'" *Id.* (quoting *Maryland Cas. Co.*, 23 F.3d at 622). "This is a 'fact-specific inquiry' that requires

18

courts to examine 'the realities of the record.'"  *Id.* (quoting *Maryland Cas. Co.*, 23 F.3d at 623).

The realities of this record indicate that Mr. Cook is adverse to LIPA, not CSC, and thus should be considered a plaintiff for purposes of Section 1367(b) to the extent he seeks to assert an affirmative claim.  *See, e.g.*, *East End Sols. v. Westchester Fire Ins. Co.*, 2017 WL 6507230, at *2-3 (S.D.N.Y. July 25, 2017) (realigning intervening defendant as a plaintiff for purposes of Section 1367(b)); *Siteworks Contracting Corp. v. W. Surety Co.*, 461 F. Supp. 2d 205, 208-11 (S.D.N.Y. 2006) (same); *see also Price v. Wolford*, 608 F.3d 698, 704 (10th Cir. 2010) ("[W]e might be required to reject supplemental jurisdiction based on an exception under § 1367(b) if we had to realign [the intervening defendant] as a plaintiff.").  As evidenced by his state court actions and apparent political advocacy, Mr. Cook's dispute is with LIPA.  LIPA, rather than any of its contractual counterparties, is responsible for obtaining PACB approval for its financing and construction projects.  Because Mr. Cook should be considered a plaintiff for purposes of Section 1367(b), and because Mr. Cook and Defendant LIPA are both citizens of New York, the court lacks supplemental jurisdiction over any claim by Mr. Cook seeking to invalidate the FTCPA, even if such a claim arose from a common nucleus of operative fact.

The court recognizes that, in interpreting other portions of Section 1367(b), the Second Circuit "ha[s] held that the statute refers to the *original* plaintiff in the action, but not to a defendant who brings a counterclaim or cross-claim, thereby becoming a third party plaintiff." *F5 Capital v. Pappas*, 856 F.3d 61, 79 (2d Cir. 2017) (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726-27 (2d Cir. 2000)). "In a typical case . . . that reading serves Congress's purpose because 'defendants are involuntarily brought into court,' whereas a plaintiff is 'master of [his] complaint.'" *Id.* (quoting *Viacom Int'l*, 212 F.3d at 727). In *Viacom*, for example, the Second Circuit permitted a fourth-party defendant who had been involuntarily haled into federal court to assert claims against the original plaintiff. 212 F.3d at 727; *see also Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 498 F. App'x 98, 102 (2d Cir. 2012) (same, for third-party defendant).

In *F5 Capital*, however, the Second Circuit made clear that this "original plaintiff" definition is not always controlling by permitting the original plaintiff – in a case removed from state court under the Class Action Fairness Act – to rely on supplemental jurisdiction to assert claims against persons made parties under Rules 19 and 20. 856 F.3d at 78, 82; *see also* 28 U.S.C. § 1367(b) (foreclosing supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule 14,

19, 20, or 24 of the Federal Rules of Civil Procedure"). Although "a superficial reading" of Section 1367(b) would have prohibited such claims, the Second Circuit found it jurisdictionally significant that "the *defendants* assert[ed] federal jurisdiction via removal." *F5 Capital*, 856 F.3d at 79, 81. Specifically, because the original plaintiff "chose a state court forum," Congress's concern about preventing "opportunistic plaintiffs" from evading diversity requirements did not apply. *Id.* at 82.

Here, unlike in *Viacom* and *F5 Capital*, the party invoking supplemental jurisdiction was not "involuntarily brought into [federal] court," but rather seeks to intervene. *Id.* at 79 (quoting *Viacom Int'l*, 212 F.3d at 727). Nor is Mr. Cook an intervenor as of right "who must intervene to defend or protect interests put in issue by the federal action and likely to be lost without the party's intervention." *East End Sols. Inc.*, 2017 WL 6507230, at *3 (quoting *MCI Telecomms. Corp. v. Logan Grp.*, 848 F. Supp. 86, 89-90 (N.D. Tex. 1994)). Instead, Mr. Cook "voluntar[ily] . . . submitted [himself] to the Court for the purposes of asserting affirmative claims of relief against the non-diverse [Defendant]." *Siteworks Contracting Corp.*, 461 F. Supp. 2d at 211; *see also, e.g.*, *East End Sols., Inc.*, 2017 WL 6507230, at *3 (applying Section 1367(b) and denying intervention when intervening defendant sought "to voluntarily submit itself to this Court for the primary purpose of asserting affirmative . . .

21

claims against a non-diverse party"). Thus, Mr. Cook should be considered a plaintiff to the extent he seeks to affirmatively challenge the FTCPA's enforceability, and the court lacks supplemental jurisdiction over such a claim because both he and LIPA are citizens of New York.[6]

*Standing.* Second, the court concludes that Mr. Cook must, but has failed to, demonstrate standing to seek a declaration that the FTCPA is void because neither of the original parties seeks such relief. In *Town of Chester v. Laroe Estates, Inc.*, the Supreme Court reversed the Second Circuit and unanimously held that an intervenor as of right under Rule 24(a)(2) "must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." 137 S. Ct. 1645, 1651 (2017). In reaching its contrary conclusion, the Second Circuit relied on its earlier statement in *Brennan* that "'there [is] no need to impose the standing requirement upon [a] proposed intervenor' where '[t]he existence of a case or controversy [has] been established' in the underlying litigation." *Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 64 (2d Cir. 2016) (quoting

---

[6] Moreover, "it is clear that a diversity-destroying party joined after the action is underway may catalyze loss of jurisdiction." *F5 Capital*, 856 F.3d at 79 (quoting *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007)). This "contamination theory furnishes limitations on joinder in certain circumstances that may well extend beyond the restrictions listed in § 1367(b)." *Id.* (quoting *Merrill Lynch*, 500 F.3d at 179). In short, even if the court realigned Mr. Cook as adverse to LIPA after – rather than before – considering the limitations in Section 1367(b), the court would still lack subject matter jurisdiction over his claims.

*Brennan*, 579 F.2d at 190), *vacated and remanded*, 137 S. Ct. 1645 (2017).

Notably, *Brennan* concerned both intervention as of right and permissive intervention, whereas the Supreme Court in *Town of Chester* confined its analysis to intervention as of right alone. *Compare* 579 F.2d at 190 *with* 137 S. Ct. at 1650-51. Thus, it is unclear whether a permissive intervenor in this circuit must demonstrate standing to seek relief that is different than the relief sought by the named parties. *See, e.g.*, *Charter Commc'ns, Inc. v. Defert*, 510 F. Supp. 3d 8, 13 (W.D.N.Y. 2021) (assuming without deciding that *Town of Chester*'s requirement applies to permissive intervenors). At least one court in this circuit has applied *Town of Chester*'s independent standing requirement to a motion for permissive intervention, although it did not directly address *Brennan*. *See 335-7 LLC v. City of New York*, 2020 WL 3100085, at *3 n.10 (S.D.N.Y. June 11, 2020) (finding that intervenors sought same relief as the parties and, in any event, independently demonstrated standing).[7]

---

[7] Other courts in this circuit have applied *Town of Chester* to motions that sought permissive intervention as an alternative to intervention as of right, without clarifying whether the standing requirement applied to permissive intervenors in particular. *See, e.g., In re Terrorist Attacks on Sept. 11, 2001*, 2021 WL 4319428, at *9 (S.D.N.Y. Sept. 23, 2021); *Greens at Chester LLC v. Town of Chester*, 2020 WL 2306421, at *4 (S.D.N.Y. May 8, 2020); *see also, e.g., Allstar Mktg. Grp., LLC v. AFACAI*, 2021 WL 75138, at *2 (S.D.N.Y. Jan. 8, 2021) (stating that *Town of Chester* applies to "non-party intervenors," but declining to reach permissive intervention); *Doe v. Zucker*, 2019 WL 111020, at *8 (N.D.N.Y. Jan. 4, 2019) (similar).

The court finds *335-7 LLC*'s application of *Town of Chester* persuasive and concludes that Mr. Cook must independently demonstrate standing because he seeks broader and different relief than the parties – namely a declaration that the FTCPA is void. As an initial matter, the court notes that *Brennan*'s discussion of standing was dicta because the Second Circuit affirmed the order denying intervention on other grounds.  579 F.2d at 190.  Indeed, the Second Circuit in *Town of Chester* appeared to deliberately refrain from characterizing *Brennan* as a holding.  828 F.3d at 64 (*Brennan* "suggested somewhat" that standing is not required); *see id.* at 64-65 & n.1 (referring to *Brennan*'s conclusion as "[o]ur approach" and "our position").  Thus, to the extent *Brennan* remains relevant to whether a permissive intervenor must demonstrate standing, it is not binding.

More importantly, *Brennan*'s rationale — that intervenor standing is not required because the parties have already established a case or controversy under Article III — is fundamentally inconsistent with the Supreme Court's admonishment that "standing is not dispensed in gross."  *Town of Chester*, 137 S. Ct. at 1650 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).  "For all relief sought, there must be a litigant with standing . . . ."  *Id.* at 1647.  Given that this principle applies regardless of whether the litigant is "a plaintiff, a coplaintiff, or an intervenor of right," *id.* the court finds that a permissive

intervenor like Mr. Cook who seeks different relief must demonstrate independent standing as well. *See, e.g.*, *Cirba Inc. v. VMWARE, Inc.*, 2020 WL 7489765, at *3 (D. Del. Dec. 21, 2020) (finding that "permissive intervention (without independent Article III standing) would not be appropriate" when intervention would broaden relief sought); *United States v. Bayer Cropscience LP*, 2018 WL 3553413, at *9 (S.D. W. Va. July 24, 2018) ("In view of . . . *Town of Chester*, this court is confident that the same [standing] principle extends to a permissive intervenor."); *PrimeSource Buildings Prods., Inc. v. United States*, 494 F. Supp. 3d 1307, 1319 n.14 (Ct. Int'l Trade 2021) (Baker, J., concurring) ("Although the context in *Town of Chester* was intervention as of right, the Supreme Court's reasoning — representing the application of constitutional standing principles — necessarily applies with equal force to permissive intervention.")

Having concluded that a standing requirement applies, there is little question that Mr. Cook fails to satisfy it. For one thing, Mr. Cook's motion does not even attempt to do so. Moreover, to demonstrate standing, Mr. Cook must show (among other things) that he suffered an injury in fact. An injury in fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotations and citation omitted). As a non-party to the FTCPA,

Mr. Cook lacks a concrete, legally protected interest in the PACB approval process and the FTCPA's enforceability.

Instead, Mr. Cook's challenge to LIPA's alleged failure to obtain PACB approval reflects nothing more than a "common concern for obedience to law." *Liu v. U.S. Congress*, 834 F. App'x 600, 604 (2d Cir. 2020) (quoting *FEC v. Akins*, 524 U.S. 11, 23 (1998)). Such a "generalized grievance, no matter how sincere, is insufficient to confer standing." *Kimmel v. N.Y. State Assembly*, 2020 WL 6273975, at *2 (E.D.N.Y. Oct. 26, 2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). To the extent Mr. Cook may contend that his political opposition to LIPA renders his alleged injury particularized, the court concludes that such a bare "ideological interest" is insufficient to confer standing. *Nolley v. United States*, 2020 WL 5393898, at *2 (W.D.N.Y. June 29, 2020) (citing *Sierra Club v. Morton*, 405 U.S. 727, 730 (1972)); *see also, e.g.*, *CREW v. Trump*, 953 F.3d 178, 195 (2d Cir. 2019) (noting that "a political motivation for a lawsuit, standing alone, is insufficient to confer Article III standing"), *vacated and remanded on other grounds*, 141 S. Ct. 1262 (Mem) (2021).

*Timeliness.* Finally, any claim by Mr. Cook seeking to void the FTCPA for lack of PACB approval would be untimely. Under New York law, "[a]n action for a declaratory judgment is generally governed by a six-year limitations period." *Busher v. Barry*, 2021 WL 5071871, at *4 (2d Cir. Nov. 2, 2021) (quoting *Town of Hempstead*

*v. AJM Capital II, LLC*, 13 N.Y.S.3d 199, 201 (2d Dep't 2015)). "This rule extends to actions seeking a declaration that a corporate transaction is void." *Id.* Here, the FTCPA was entered into on December 17, 2004, and its predecessor – an agreement between LIPA and non-party TransEnergie U.S. Ltd. – was entered into on August 2, 2000.  (Compl. ¶¶ 21-22; Answer ¶¶ 21-22.) Applying the six-year statute of limitations, any claim by Mr. Cook for a declaration that the FTCPA is void is well over a decade late.  Further, in dismissing his state court actions, the New York Supreme Court concluded that Mr. Cook's remedy for the alleged failure to obtain PACB approval "is not a declaratory judgment action, but a CPLR article 78 proceeding in the nature of mandamus to compel." (*Cook I* at 3; *see Cook II* at 2.)  Because a shorter limitations period of four months applies to article 78 proceedings, Judge Lindsay correctly concluded that Mr. Cook's claim is untimely regardless of whether the court applies the limitations period for declaratory judgments used in *Busher* or the limitations period for article 78 proceedings used in *Cook*.  (R&R at 11.)

    Mr. Cook contends that no statute of limitations applies to his claim because the FTCPA was void from its inception.  (Cook Reply at 7.)  In support of this argument, Mr. Cook primarily relies upon *Faison v. Lewis*, 22 N.Y.3d 220 (2015). (Cook Reply at 7, 12-13.)  As Judge Lindsay recognized, however, the Second

Circuit in *Busher* specifically rejected the plaintiff's reliance on *Faison* to escape the statute of limitations. *Busher*, 2021 WL 5071871, at *4 n.1 (finding that "*Faison* stands for the limited proposition that 'a claim against a forged deed is not subject to a statute of limitations defense'" (quoting *Faison*, 25 N.Y.3d at 224)). Mr. Cook also relies on *Riverside Syndicate, Inc. v. Munroe*, which held that the statute of limitations did not bar a claim for declaratory relief challenging "an agreement by tenants to pay an illegal rent for a rent-stabilized apartment, in exchange for an agreement by the landlord to let the tenants use the apartment as a second home." 10 N.Y.3d 18, 21, 24 (2008). (*See* Cook Reply at 11-12; Objections ¶¶ 5-6.) The Second Circuit was aware of *Riverside Syndicate*, given that the case was relied upon in *Faison* and cited by the plaintiff in *Busher*. *See* Appellant's Br., 2021 WL 510597, at *34 (2d Cir. Feb. 8, 2021). The Second Circuit nonetheless held that the six-year statute of limitations "extends to actions seeking a declaration that a corporate transaction is void." *Busher*, 2021 WL 5071871, at *4. Here, unlike in *Faison* and *Riverside Syndicate*, Mr. Cook is seeking to void a corporate transaction between CSC and LIPA.

*Faison* and *Riverside Syndicate* contain some language favorable to Mr. Cook's position that an action challenging a void agreement is never subject to a statute of limitations defense. *See, e.g.*, *Faison*, 25 N.Y.3d at 226 ("[A] statute of limitations

'does not make an agreement that was void at its inception valid by the mere passage of time.'" (quoting *Riverside Syndicate*, 10 N.Y.3d at 24)).  In the appeal of his second state court action, Mr. Cook of course remains free to argue that the New York courts should apply *Faison* and *Riverside Syndicate*, rather than the six-year statute of limitations applied in *Busher* or the four-month statute of limitations applied in *Cook I*.  In the absence of more definitive guidance from the New York Court of Appeals, however, the court follows the Second Circuit's recent guidance in *Busher* and applies a six-year statute of limitations.  2021 WL 5071871, at *4.  Based on that statute of limitations, Mr. Cook's challenge to the FTCPA comes no less than eleven years too late.

As a last-ditch effort, Mr. Cook's objections raise two new arguments regarding timeliness.  (Objections ¶ 16 (arguing that "the statute of limitations beg[an] anew with each separate installment" paid under the FTCPA); *id.* ¶¶ 21-22 (alluding to the requirements for equitable estoppel).)  "In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."  *Ferreira v. Carranza*, 2022 WL 34610, at *2 (E.D.N.Y. Jan. 4, 2022) (quoting *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019))).  The court deems Mr. Cook's

new arguments forfeited because they could have been raised before Magistrate Judge Lindsay but were not.

## CONCLUSION

For the foregoing reasons, the court ADOPTS the Report and Recommendation and DENIES Mr. Cook's motion for permissive intervention.

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:    January 27, 2022
          Brooklyn, New York